G. HAROLD GILLAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LEE E. GILLAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SAMUEL W. GILLAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 104149, 104150, 104151. Promulgated November 19, 1941.

*Harold J. Requartte, Esq.*, for the petitioners.
*William V. Crosswhite, Esq.*, for the respondent.

OPINION.

ARNOLD: These proceedings, consolidated for hearing and decision, involve deficiencies in unjust enrichment taxes for 1937 as follows: G. Harold Gillan, $506.98; Lee E. Gillan, $506.99; Samuel W. Gillan, $506.98. The issue is whether petitioners were unjustly enriched by reimbursements from vendors of amounts representing processing taxes.

The proceedings were submitted on a written stipulation of facts. We find the facts to be as stipulated, and hereinafter set forth the pertinent portions thereof.

The petitioners are individuals, with legal residences in York, Nebraska.

In the calendar year 1937 the Gillan Baking Co., a partnership of the three petitioners, received, as reimbursement for Federal excise tax burdens included in prices paid by it for wheat flour purchased and used to make bread and pastry in 1935, the following amounts: From the Omar Baking Co., $1,348.26; from the Crete Mills, $500.44; from the Pillsbury Mills, $52.50, total, $1,901.20.

The number of barrels of flour represented by these reimbursements was 1,931.5, weighing 196 pounds each.

The selling price of the articles produced from 1,931.5 barrels of flour was $49,852.02.

The cost of 1,931.5 barrels of flour, plus other ingredients entering into the articles, was $24,669.70. Said sum does not include the cost

of bread and pastry wrappers, nor has it been reduced by the amount of reimbursements received.

During and after 1928 the Gillan Baking Co. was in the business of wholesale and retail baking. The five-year period 1928 to 1932, inclusive, is a sufficient base period for the purposes of these proceedings. During said period 17,760 barrels of flour, weighing 196 pounds each, were processed into bread and pastry. The selling price of the articles was $443,699.86. The cost of the flour and other ingredients entering into the articles was $201,260.89. This cost did not include bread and pastry wrappers.

During 1935 and the base period 1928–1932, inclusive, the Gillan Baking Co. incurred expenses as follows:

|  | Entire year 1935 | Base period 1928–1932 |
|---|---|---|
| Wrappers | $4,969.03 | $18,564.58 |
| Payroll (except partners): | | |
| Sales drivers | 4,027.10 | 27,682.84 |
| Sales room labor | 1,243.18 | 4,110.02 |
| Office salaries | 734.97 | 3,563.89 |
| Bake shop labor | 8,089.18 | 45,831.34 |
| Rent | 2,100.00 | 10,920.00 |
| Interest | 88.06 | 753.95 |
| Taxes | 130.00 | 822.49 |
| Truck expense | 4,665.72 | 26,006.44 |
| Depreciation | 1,966.52 | 6,417.18 |
| Repairs | 126.85 | 2,273.72 |
| Fuel | 876.77 | 9,215.44 |
| Power | 1,219.91 | 5,201.43 |
| Insurance | 773.06 | 3,015.58 |
| Bake shop supplies | 1,406.64 | 9,193.44 |
| Other expense, advertising, etc | 2,658.53 | 15,668.21 |
| Total | 35,075.52 | 189,240.55 |

During 1935 Gillan Baking Co. used 2,888 barrels of flour weighing 196 pounds each.

During the entire year 1935 there existed in the trade territory of the petitioners a "price war" which adversely affected the sale prices of petitioners' products. This "price war" was started by competitors of the petitioners.

Respondent determined that the distributive share of the processing tax reimbursements was taxable to each petitioner under 501 (a) of the Revenue Act of 1936.

Title III of the Revenue Act of 1936 imposes a tax of 80 percent on the unjust enrichment accruing to any person as a result of shifting to others the burden of Federal excise taxes. Three classifications of persons subject to the unjust enrichment tax are set up by said act, which may be briefly described as follows: (1) Persons who shifted the excise tax burden to their vendees but failed or refused to pay the excise tax; (2) persons who shifted the burden to their vendees but received reimbursement for the excise tax burden from their vendors; and (3) persons who shifted the burden to their

vendees but received refunds or credits from the Government. Sec. 501 (a). Petitioners received reimbursement from their vendors and will be subject to the tax, if otherwise liable, under the provisions of section 501 (a) (2) of the Revenue Act of 1936.[1]

The first question which arises under section 501 (a) (2) is the amount of net income that petitioners realized from the reimbursement. A statutory method for computing this net income is provided by section 501 (d). Said section provides that the "net income from reimbursement * * * shall be computed as follows: From the total payment * * * of reimbursement to the taxpayer from vendors for amounts representing Federal excise tax burdens included in prices paid by the taxpayer to such vendors .* * *, there shall be deducted the expenses and fees reasonably incurred in obtaining such reimbursement * * *." Under the stipulated facts the net income of these petitioners would be the entire amount of the reimbursements as no showing has been made that any expenses or fees were incurred in securing the reimbursement.

The second question under section 501 (a) (2) is the extent to which petitioners have shifted the burden of the excise tax to their vendees. For the purposes of determining the extent to which the taxpayer has shifted the burden to others, the statute provides that the amount of the shift shall be presumed to be an amount computed as follows (section 501 (e) (1)):

> (1) From the selling price of the articles there shall be deducted the sum of (A) the cost of such articles plus (B) the average margin with respect to the quantity involved; * * *

Section 501 (e) (2) provides an alternative method of computation "If the taxpayer so elects by filing his return on such basis * * *." However, we do not know whether the petitioners filed returns, or whether they elected to take advantage of the alternative computation, and therefore we must compute the extent of the shift, if any, under the provisions of section 501 (e) (1).

The presumption created by section 501 (e) is rebuttable by the express terms of section 501 (i), which permits either party to rebut the presumption "by proof of the actual extent to which the taxpayer shifted to others the burden of the Federal excise tax." Subdivisions (1) and (2) of section 501 (i) indicate the wide scope and

---

[1] SEC. 501. TAX ON NET INCOME FROM CERTAIN SOURCES.

(a) The following taxes shall be levied, collected, and paid for each taxable year (in addition to any other tax on net income), upon the net income of every person which arises from the sources specified below:

&ast; &ast; &ast; &ast; &ast; &ast;

(2) A tax equal to 80 per centum of the net income from reimbursement received by such person from his vendors of amounts representing Federal excise-tax burdens included in prices paid by such person to such vendors, to the extent that such net income does not exceed the amount of such Federal excise-tax burden which such person in turn shifted to his vendees.

range of proof permitted in rebutting the presumption. For the purposes of this decision we need set forth in the margin only the provisions of section 501 (i) (1).[2]

Petitioners contend that the cost of wrappers for their bread and pastries is a proper element of "the cost of such articles" to be considered in determining the extent to which they shifted the burden of the excise tax under section 501 (e). Respondent has refused to include the cost of bread and pastry wrappers as a part of the "cost of such articles" in making the computations under section 501 (e), and he concedes that this is the principal difference of opinion between the parties.

Section 501 (f) (2) of the 1936 Act defines the term "cost" in the case of articles manufactured or produced by a taxpayer as meaning "the cost to the taxpayer of materials entering into the articles; or, in the case of articles purchased by the taxpayer for resale, the price paid by him for such articles (reduced in both cases by the amount for which he is reimbursed by his vendor)." In our opinion the term "cost" as used in 501 (f) (2) and elsewhere in section 501 includes the cost of wrapping the bread and pastries. The finished article for sale to customers in the bread and pastries wrapped. The cost of wrappers was specifically found to be one of taxpayers' costs of production under section 501 (i) (1) (B) in *E. W. Stockton*, 44 B. T. A. 514, and we see no reason for a different conclusion under section 501 (i) (1) (A).

A computation in accordance with the formula provided by section 501 (e) (1) (A), based upon the stipulated facts and our holding that "the cost of such articles" should include the cost of wrappers for bread and pastry, creates a presumption that the burden of the excise tax was not shifted by petitioners to others.[3]

As rebuttal, in the event that we decide the presumption is with petitioners, respondent points to the stipulation that during the entire year 1935 a "price war" existed in petitioners' territory which adversely affected the sale prices of petitioners' products. We are asked to recognize as a matter of common knowledge that the effect of a price war is to reduce selling prices and consequently reduce the

---

[2](i) Either the taxpayer or the Commissioner may rebut the presumption established by subsection (e) by proof of the actual extent to which the taxpayer shifted to others the burden of the Federal excise tax. Such proof may include, but shall not be limited to:

(1) Proof that the change or lack of change in the margin was due to changes in factors other than the tax. Such factors shall include any clearly shown change (A) in the type or grade of article or materials, or (B) in costs of production. If the taxpayer asserts that the burden of the tax was borne by him while the burden of any other increased cost was shifted to others, the Commissioner shall determine, from the respective effective dates of the tax and of the other increase in cost as compared with the date of the change in margin, and from the general experience of the industry, whether the tax or the increase in other cost was shifted to others. If the Commissioner determines that the change in margin was due in part to the tax and in part to the increase in other cost, he shall apportion the change in margin between them.

gross margin. Respondent submits that the price war rather than the excise tax explains the decrease in margin and that there was in fact a shifting of the entire burden of the tax. He contends that but for the price war petitioners would have made their ordinary profits and the presumption would have been what was actually true, namely, that petitioners shifted the entire burden of the tax.

We are not persuaded by respondent's argument. Actually petitioners' 1935 selling prices per barrel of flour increased over their selling prices for the base period by $0.8269 per barrel, but increased costs of production for the same periods more than offset the price increase. Wrapper costs alone increased by $0.6753 per barrel, while other costs, after deducting the amount reimbursed, increased by $0.4563 per barrel. We think that where increased items of cost are established, as they have been here by the stipulation, there is no reason to assume that other factors, such as the excise tax, intervened and caused petitioners to shift the tax burden and bear the burden of the increased costs of production. Under the statute the presumption is that petitioners did not shift the burden. We are not convinced by the rebuttal evidence that the presumption is overcome by the existence of a price war.

*Decision will be entered under Rule 50.*

---

[3] Computation under section 501 (e) (1)—

| | | |
|---|---|---|
| Selling price of articles | | $49, 852. 02 |
| Less: | | |
| (A) Stipulated cost | $24, 669. 70 | |
| Less reimbursement | 1, 901. 20 | |
| | $22, 768. 50 | |
| Cost of wrappers (1,931.5 bbls.) | 3, 323. 30 | |
| (B) Average margin of quantity involved ($12.6055 x 1,931.5) | 24, 347. 52 | |
| Total | | $50, 439. 32 |

$12.6055 is obtained by the following computation: ($443,699.86—$219,825.47) ÷ 17,760. The $219,825.47 consists of $201,260.89 + $18,564.58.